HENRY C. SHELTON *vs.* SAMUEL O. CHURCH AND OTHERS.

Where a creditor or purchaser obtains the estate of an insolvent debtor at an under rate, there is a violent presumption of a secret trust and fraudulent intent, and such presumption unless rebutted is conclusive.

TRESPASS *de bonis asportatis*; brought to the Court of Common Pleas, and tried to the jury before *Willey, J.* The plaintiff claimed title to the goods in question under a bill of sale from Henry P. Horton, dated November 19th, 1870, for the consideration therein expressed of seventy-five dollars, eighty-nine cents. Horton, prior to the execution of the bill of sale, had hired the store containing the goods from the defendants Hall and Lewis; and the ground of defence was that the defendant Church, as a constable, had taken the goods by virtue of a writ of attachment against Horton, in favor of the other defendants, Hall and Lewis, in an action brought for the rent of the store; and that the alleged sale to the plaintiff by Horton was fraudulent and void as against the defendants. The jury rendered a verdict for the plaintiff, and the defendants moved for a new trial for a verdict against evidence.

The evidence was substantially as follows :

## *Testimony for the plaintiff in chief.*

*Henry C. Shelton.*—I am the plaintiff, and reside in New Haven; am a wholesale dealer there in tobacco and fancy articles. Was in that business there in November, 1870. From November 19th to November 28th, 1870, I was also in the cigar and tobacco business in Meriden. I was not there myself; don't know on what street the store was, but it was on the same block with the depot; don't know personally, by inspection, what the stock was. I employed Frederick J. Coe as my agent at Meriden. He bought the store for me. He is salesman and collector for me, and drives a team. He is authorized by me to transact any business on his route which I could do. He told me, November 19th or 20th, that he had bought out the store, taken a bill of sale, and paid for it. I don't recollect that he told me why he had bought it. He said he had an idea of going on and selling it out; that he had bought it in my name; that he wanted to put in goods, and run it awhile; and had hired a clerk to run it. I left it with him to go on and close it up; told him it was all right. I knew before this that Horton owed me $75 or $80. I suppose these goods were in payment of the bill. I don't think I told Hall that he would probably have got his pay out of the goods, if he had let Horton alone. I suppose we should have closed out the business, and paid fifty cents on the dollar. I am under the impression that I authorized my agent to say, that if we succeeded in selling out the goods, I would make some arrangement with Hall and Lewis. I thought if an attachment were put on it would complicate it. I am under the impression that I had a conversation, after the sale to me, with another creditor of Horton, living in New Haven, who threatened that he would attach the goods in the store as Horton's; and that I told this party that if we succeeded in selling out the goods to advantage, I would make some arrangement with him.

*Frederick J. Coe.*—Have been Mr. Shelton's traveling dealer and agent for four years. On November 19th I went to Meriden, and besides transacting other business purchased for him these goods from Mr. Horton, and remained in the store.

that afternoon and evening. Went up there every day but two of the next week. November 21st, I put in new goods from Mr. Shelton's store worth $32.75. When Mr. Church came into the store on November 28th to attach, I was making an inventory of the goods, and had inventoried the tobacco on the shelves. The value of that and of the balance of the goods, according to my best recollection, at wholesale prices, together with the value of the fixtures at the prices in an old inventory given to Horton when he bought the store, amounted to $333. All of these were bought from Horton, except those mentioned before worth $32.75. I sold from November 21st to November 28th, out of the store, goods worth $35.69. I took possession of the goods immediately after getting the bill of sale. Horton also verbally assigned me his lease; he had only a verbal lease. I went directly to Hall's store, and told him I had bought out, for Mr. Shelton, Horton's cigar store, and that from that time Shelton would be responsible for the rent. A Mr. Morton of Rocky Hill offered me $300 for the goods in the store just before they were attached. I asked him $350. The attachment broke off the negotiation. I did not make any inventory when I bought. Horton showed me an inventory of the goods he bought originally. John Rich was at the store every evening for Mr. Shelton. A boy named Payne was there during the day. I have seen him there before the sale, but don't know as he was assisting Horton more than others.

### Testimony for the defence.

*Samuel O. Church.*—Am a defendant, and the attaching officer. When I went to the store I told Mr. Coe that I was instructed to attach the goods as Horton's. He replied that he had a bill of sale; that if I chose to attach, all right. On November 18th, 1870, I attached the goods in the store on a writ against Horton in favor of John C. Saunders, and shut up the store. This attachment was released the same day, upon Horton's giving Saunders a bill of sale of a show case, &c.

*Wm. Judd.*—Am a liquor dealer. I told Mr. Coe that Mr. Saunders had shown me a bill of sale from Mr. Horton to

himself, of the show case and the figure of the Indian that stood by the door. Coe said that he thought there was enough in the store to pay him and Saunders. I think this conversation was after the bill of sale to Mr. Shelton was taken by Coe.

*Joseph H. Phillips.*—Am a cigar manufacturer. I inventoried the goods attached. They were worth $153.

*John T. Rich.*—From November 21st to November 28th I tended this store, mostly evenings. Mr. Horton told me to tell Mr. Coe that he wanted me to tend the store; and on my going to the store and stating this to Mr. Coe, he engaged me. Mr. Horton was in there on Saturday, November 19th, the day of the sale, and once a week after, namely on Sunday, November 27th, when he came in with Mr. Penny. I let him have two cigars on credit on my own responsibility. Mr. Penny said, if Horton sent for any goods to charge them to him. Horton had sent a boy and got some cigars on Thanksgiving day, November 24th. Horton went to New York on Monday, November 21st, and returned Thanksgiving night, November 24th. Horton, Payne and I all boarded in the same family, both before and after the sale, and till after the attachment. It was the family of Mrs. Payne, my mother-in-law, and the mother of the boy.

*Seth J. Hall.*—One of the defendants. In November, 1870, Mr. Coe came into my store and said, " My name is Coe. I travel for H. C. Shelton of New Haven. I (or we) will be responsible for the rent of the cigar store after this date." I said, " We have rented the store to Horton"; did not tell him I would rent it to him. He stayed but a minute. He did not tell me he had bought out Horton. I recognized Horton as the tenant, up to the attachment. Mr. Coe did not ask what the rent was, nor did he offer or pay any. Just before Mr. Coe came into my store, Horton had brought in a man from Rocky Hill, who, he said, was ready to buy his stock in trade. This man asked me if we would rent him the store for two or three years. We declined to do so. I had a conversation with Mr. Shelton in New Haven, in February, 1871, after our attachment. I told him that Horton had told me a

few minutes after Mr. Coe had left my store on November 19th, after my interview with him above stated, that he, Horton, was in trouble as to his creditors, and that Coe and he had a private understanding that Coe was to come in and take the goods in Shelton's name until they could be sold out, when he was to pay the $75.89 debt to Coe, and the rent due us: and that he, Horton, would only want the store till December 1st, 1870, as he expected a Mr. Morton, of Rocky Hill, would by that time buy out the store and take it off his hands. Mr. Shelton then said to me, "When I heard of your attaching I was mad. If you hadn't attached, the goods would have been sold, you would have got pay for your rent, and I should have got my bill." The rent I attached for was due before the date of the bill of sale.

*Oliver Stevens.*—Clerk for Seth J. Hall. Mr. Coe came into the counting-room in November, and said, "I'll be responsible for the rent after this date." I did not hear him say that he had bought out the cigar store.

*Henry C. Shelton, recalled in rebuttal.*—The conversation between Mr. Hall and me was in February, 1871. He wanted to effect a settlement of this suit. I think very likely I might have said that if he hadn't attached he would have got his pay.

*L. L. Phelps,* in support of the motion.

*G. W. Smith,* contra.

BUTLER, C. J. We are all satisfied that the evidence detailed on the record in this case shows that the conveyance from Horton to Shelton was *poisoned by a trust,* and therefore fraudulent and void as against the creditors of Horton.

It is elementary law that " in every instance where a creditor or purchaser obtains the estate of an insolvent debtor at an under rate, there is a violent presumption of a secret trust and fraudulent intent", (1 Swift Dig., 275), and such presumption unless rebutted is conclusive.

In this case the facts clearly show that the vendor was in-

Shelton *v.* Church.

solvent, and that all his property was conveyed to a creditor in payment of a debt which was less than one-fourth of the true value of it, and about one-fourth of the price which a purchaser offered and stood ready to give for it, and the presumption of a trust is as violent as it well can be in any case. There is nothing to rebut the presumption, but much in the testimony, and particularly in the proved or acknowledged admissions of Shelton and his agent Coe, to confirm it. That there was a secret trust therefore was established by the evidence in the case.

It is unnecessary to consider the other questions raised. The bill of sale being fraudulent and void, the action cannot be sustained against the defendant, and a new trial must be advised.

In this opinion the other judges concurred.